Good morning. May it please the court. My name is Dean Sandiford from the Federal Defenders and I'm here for Shane Armajo. The issue in this self-defense case is whether the district court erred when it excluded evidence of Eli's assaults against others. In making this ruling, the court concluded that the evidence lacked meaningful probative value because Shane wasn't the victim. This was an abuse of discretion because the relevance of the assaults didn't turn on the identity of the victim. The evidence was offered to prove that Shane reasonably feared for his life when Eli attacked him. In other words, that Shane had reason to believe that Eli was dangerous and violent. For this reason, it didn't matter who the victims were. They were probative simply because Shane was aware of them, which gave him reason to fear for his life when Eli attacked him by the side of the road. I was going to ask you, counsel, didn't the district court in ruling on these issues, which by the way, in reading his decision, I had trouble finding out whether he was doing 404B or 4043. It was a little mixed up, but wasn't part of his reasoning in separate trial as to each one of those? That was one of his reasons. Isn't that a good enough reason from the trial court's discretion on the evidentiary ruling? Well, no, it's not because 403 is a balancing of multiple factors, kind of like a sentencing is. And our argument is that the district court made an error in assessing the evidence's probative value, which caused him to steeply discount how relevant the evidence was. That throws the whole balance out of whack, and you can't confidently tell whether the district court would have excluded the evidence had it not made this error with respect to the probative value. You know, this is against the backdrop of this court's case law saying exclusion under 403. Well, let me ask you this. No matter how probative it is, if it's going to create a whole second trial, does that not make a difference? Well, I mean, it could in some cases, but as we argued in our brief. Why not in this case? Well, because there's no reason to think this would have spun off into separate trials. I mean, one of these incidents did come in. We saw how the testimony played out. It was two very short witnesses, and then the victim was confronted with it and denied it. It probably took up. I would be a pure guess that the other two are going to be short like that one, because what would happen if the answer was just simply no, it would have been over. Well, that was the answer. I mean, that's the answer that the victim gave when he was confronted with the one that came in. But if this evidence had come in, it would have taken much the same form as the one that was admitted. There would have been a victim or whoever come in, testified briefly to the circumstances. Eli, the victim, would have been confronted with it, and probably he would have denied it. I mean, he denied even the one that came in when there was documentation of a conviction. I wanted to commend you, too, also on the fact, I think there were four of those bases, and the last one was the ax, and you didn't appeal that. I mean, I thought that was pretty good on your part to recognize that, and I wanted to commend you for that. Well, thank you. Thank you. But, you know, our point on the many trials is really that, you know, that was one of the court's concerns. But you don't know how the court would have balanced everything had it not made this mistake in assessing the probative value. This is a mistake on one side, it throws everything off. It doesn't take as much in terms of undue prejudice to exclude the evidence in that situation. And, you know, this is an argument we made in our briefs, and the government hasn't, didn't respond to that. You don't have briefing on the other side of that particular question. I'd also like to point out that this was a, you know, on its own terms, even without the evidence, a fairly strong case of self-defense. You know, by his own admission, Eli was the one who instigated the fight. He was landing punches. Shane wasn't. He broke Shane's glasses. They were alone on a desolate stretch of road. Eli was much larger than Shane, and the government has portrayed him as an out-of-shape alcoholic, but he bragged at trial that he could lift a 700-pound log. Plus, there's this laceration to Shane's chest, and there's not conclusive evidence about how that came about, but it does suggest at least the possibility that Eli was the one who initially pulled the knife. You know, one of the things, counsel, that was concerning me in reading this whole record and looking at it, to say that these two individuals were as intoxicated as a minor, say, I don't know how with that blood alcohol they even remember anything, which poses a problem for me as to be picking and choosing what you want to remember or don't remember. Right. Well, I have a couple points on that. They were undoubtedly very intoxicated. I don't think, well, Shane didn't remember really anything about the fight. I don't think Eli did either based on his kind of evolving stories over time, but you know, lack of memory after the fact doesn't, isn't the same as lack of awareness in the moment, you know, and we know they weren't incapacitated. They'd just come from their friend's house. They were very drunk, but they were talking. They were bickering. They got in the car and drove off. Second, you know, any, you know, any kind of gaps in the evidence due to their intoxication really cuts against the government and not Shane because they had the burden of disproving self-defense beyond a reasonable doubt. You know, all we had to, all the defense had to do was to raise a reasonable doubt that this might have been self-defense, and the circumstantial evidence that we know that I already went through, you know, the difference in their size, them being alone on the side of the road, Eli starting the fight, all supported self-defense. How do you get around the fact that notwithstanding a prior assault by Eli, this kid was living with his uncle on, they were partying on a daily basis. They were going fishing and that had gone on after the last assault, so. Right. Well, I think given the situation, it's not as if Shane had much of a choice about who he could live with. He was living in a trailer without electricity, without running water. His parents were dead. He couldn't work due to disability. He was essentially trapped with Eli. And, you know, there's plenty of cases where a significant other, an abused significant other or spouse acts in self-defense. You know, the same line of argument could be set against them too, but they're essentially trapped in the relationship. Shane's not that different from them. He had nowhere else he could turn. He was desperately poor and really had nowhere else to live. How old is he? He's 37 or 37 at the time. Yeah, but he couldn't, he couldn't work. His severe psoriasis, he was on full disability. You know, he, it's not as if, you know, his association with Eli can realistically be described as a choice. Let me ask you what your proffer was with respect to these other assaults. The proffer with respect to the assault against the brother was there was a police report. The police were called and the ones that were not permitted. Yeah. Yes. This is one of the ones that wasn't admitted. It was the one against the brother and it was an assault that was documented in a police report. The police were called, the police show up, they arrest Eli because based on Blake's accusation that Eli came in drunk, very much like this, and attacked him. The proffers as to the... Well, let me ask, that's all there was on that proffer? That's all there was on that proffer was the police report. So there's nothing about the extent of the injury. I mean, if these were, what struck me, tell me if I'm wrong with respect to others, but I thought this was true of all the proffers, is none of the proffers showed great bodily harm. And so if this would be self-defense, if he feared great bodily harm, then his knowledge of assaults that didn't result in great bodily harm would have very little probative value, I would think. Well, that certainly wasn't a concern of the district court, you say? It was not a concern of the district court. But, I mean, just to answer your question... Okay, go ahead. No, but just to answer your question more directly, what we do know about the assaults is like, for example, one, when it was an assault against Eli's fiancée, that Shane called the police. And I think that's significant for a couple of reasons. One, it suggests that Shane didn't think he could handle the situation and he thought the police were also called with the assault on the brother. And, you know, there was testimony from family members at the trial that this family in general was very hesitant to involve the police in their affairs. So the fact that they called the police does suggest, or could suggest to a jury, that there was, this was a dangerous situation. Second, you can't take, you know, you can't, kind of, not take into account the circumstances of this assault, which was that there was no one to call for assistance. They were all alone in a very remote location. They were both very drunk and Eli started attacking them. So, you know, in that situation where there was no one to intervene, no way to call for the police, you know, a jury could think it was reasonable for Shane to pull a knife in that situation, assuming he's the one who pulled the knife. I think it's also significant... Regardless of whether you fear a great bodily... I mean, the whole... The purpose of these, of putting on evidence of these other events, I thought, was to show that he had a legitimate fear, a reasonable fear of great bodily harm. And I don't see how those events could be probative on that point if the prior assaults didn't result in great bodily harm. Well, I think that in general, if you take them all together, what they show is a man with a long history of violence. And so let's convict, you know, so he deserves to be... Not that he deserves it, but that, you know, someone who has been consistently violent over a long period of time is just a more dangerous and scarier person. Or you can't take them all together, excuse me for interruption, so which ones are we taking to come to your conclusion? Not the one that we're not challenging on appeal, but the one against Shane himself that did come in, and then the three or four that we're saying were improperly excluded. Did you say in connection with the fiancé that they did call the police or they didn't call the police? Shane called the police for one of them. Yeah, Shane called the police for one of those. And, you know, I think that just as a general matter, I don't think that, you know, the jury would necessarily think, well, Shane knew about these things. He didn't have to fear for his life. I mean, I think what they show as a general matter is that the person Shane was dealing with was somebody with a long history of violence and who attacked in particular people who were close to him. But you do have to put it in context of, one, there being no question who started this fight, and the judge did permit into evidence the prior attack by the victim on the defendant. Right. So then the question is, what more are we in terms of proper probative value as opposed to just proving that the victim is a guy who deserves to be knifed? No one wanted to argue that the victim deserved to be knifed. You're worried about the jury drawing that sort of inference. Sure, sure. No, but if I can answer your question more directly, just hearing about the one assault against Shane just means they heard of one isolated incident where he was attacked once by his uncle. All the other evidence put that in a very different light because it shows a longer history of violence, that this wasn't just some isolated altercation probably driven by intoxication like this one, but that this was a guy who repeatedly assaulted people who were close to him. Which is exactly what the judge was concerned about. Yeah, but this is to prove the defendant's state of mind. I mean, it's interesting, I was waiting for you to say that. And you did what I think is the natural thing for people to think, and what the jurors probably thought, which wasn't to focus on, oh, this shows that the defendant had... Well, I apologize for that. I didn't mean to... Implicitly through all this, I mean, his state of mind. And that's the whole point, is that you have to look at who Shane would have thought that he was dealing with at the time. Granted, I understand the propensity problem with this, but courts have routinely ruled that this type of evidence is admissible to prove state of mind as long as there's a cautionary instruction which could have been given in this case. Well, I'm thinking about it because I'll ask this question of both counsel. What is the remedy in regards to this case? First, if we look at the fact that you might win in regards to the issues that you raise, is the government entitled, if you were to win, to retry him? Or is this a constitutional error that he gets free because he was not given an opportunity to defend himself in court? What is your remedy? The government could retry him. Do what? The government could retry him. You agree that the government can retry him? There's no double jeopardy. And would the trial judge have to allow in the evidence of all three, even if there's additional information that might make the judge think, no, I don't think this should come in? No, I don't think so. It would just have to be reconsidered. A brand new trial, the judge could reconsider this. So we would reverse for failure to allow certain evidence in, and yet on retrial, the judge could refuse to allow the evidence in? Well, only because of the judge just made a mistake in assessing the probative value of the evidence. We're saying that's harmful because the judge could balance it differently, but we're not saying the balance necessarily would have to be different. Thank you. Thank you. Welcome back. Thank you. It's been a long time. May it please the court. Do you have a theory of why the jury convicted in this case? Your Honor, this is one where I was trial counsel in this one. In the times of COVID, we have things going on, and the guy with the bad heart condition had to go in and do it at the last minute. But what I can tell you, Your Honor, and that I think will probably address some of the arguments from the defense counsel, is that they're looking at this with the rosiest of rose-colored glasses. The United States put all the evidence out there. The United States acknowledged that Mr. Armejo, Eli, the victim, often we refer to him as Eli because of all the multiple family members. So if I do it, that's why. We acknowledge that Eli was completely intoxicated. We acknowledge that he was the one that initiated the fight, and they went to the out there. But what the jury saw, Your Honor, why the jury convicted, is that the testimony about the wounds to the defendant were not consistent with the physical evidence there. He had these wounds on his chest and his stomach that he did not testify, so it did not come into evidence, and he never really said how he got these wounds. But the defense tried to make note of a sweatshirt that he was wearing, but what was clear in the sweatshirt that he was wearing, and he said that, I got cut on this sweatshirt, there was no blood whatsoever on the inside of the sweatshirt. There was a mattress in which there was lots of blood that he said he bled on, but on the sweatshirt itself that he supposedly got cut with and then had to drive another 20 minutes back into town, no blood whatsoever. The fact that he left Mr. Armejo there, the contention by the defense was that Eli had a knife, yet there was no evidence whatsoever to support that. The only knife that was found was one that was with the defendant when he was arrested. The defendant was known to carry a knife with him as well. So there was nothing to establish that Mr. Armejo, that Eli was the one, he was the one that initiated the fight, but as our theme was in the trial, the defendant, Shane, he was the one that brought a knife to a fistfight. He escalated it much more than needed to be. These two had a long, long, long history, as can be detailed in the one instance that was allowed in, Your Honor, under that reverse 404B theory of getting in fights and arguments with each other. In the instance that was not allowed in, Your Honor, that you referenced, they had a history of getting in fights with one another. So that, I think, is why it was there. In any of these other fights, was there a weapon involved, a knife or a gun? So what we can say is, and it is in the record, in the instance that was not involved with the fight, Eli hit Shane with a fireplace poker, but the reason he did that is because Shane had a shotgun and racked around and threatened Eli, and then Eli hit him with the fireplace poker. But that instance was not allowed in. The jury did not hear that. The court, however, did hear that and knew that when it made its reverse 404B determination. So who were the two involved in this fight with the shotgun and the poker? It was Eli, the victim, and Shane, the defendant. So Shane, the defendant... Okay, so there were two prior assaults? Yes, there were two prior assaults between these two. The one that got in, the one that didn't, was the poker and the shotgun. That is correct, Your Honor. Okay. And the reason why, what was the objection and how was it sustained? The objection in that case, Your Honor, so there are the four instances, and what is referenced, what is seen in the record is that the one instance that was allowed, there was a conviction against the victim, Eli, showing that he was the assaulter in that case. It occurred, if memory serves me correct, in 2018. In that 2019 instance, it was not clear what happened. What was clear is that there was a shotgun and there was a fireplace poker. There were no arrests. There were no citations. There were no convictions, if I remember that part correctly. And as the court referenced, and was a concern for the United States, as well as the court, is that the idea of there would be all these many trials. The one instance that was allowed, it was a confirmed instance. There was a conviction for an assault. The other two that are at issue in this appeal, because there was one prior assault that is not being, the exclusion of the evidence of that assault is not being challenged on appeal. The other, so there are three being challenged on appeal. One was the poker firearm, and the other two were the victim and his spouse. Is that right? So the poker firearm is the one that they are not contending. The two, the easy way to remember them, there's so many. But the two, your honor, are the other two that are referenced in here. One is the assault against the handicapped brother, and the other is the domestic violence against his girlfriend, fiance. So those are the two that are under contention right now. And what we have, your honor, and it's why the United States begins with the plain error analysis. Is in the very first reverse 404B notice, all it stated was four numbers about what they wanted to introduce. No support to it whatsoever. The supplemental notice gave much more information regarding, I believe it was the axe handle. And again, I'm confusing the axe handle and the fireplace poker. But the one instance that was allowed that Eli was convicted of, that was, there was evidence provided by that from the defense, and there was a conviction. For the other remaining things, there was a report that was provided regarding. I'm sorry, was the one that was let in, was there an axe handle there? I believe there was, if memory serves me correct. Can I correct on this? There were a lot, your honor. I believe that was the one that was allowed. And that was an axe handle used by the victim. Yes, that is correct, your honor. Okay. And if I can, may I have a moment, your honor? I can definitely get this answer for sure. We'll check it. We'll check it. What about the other two? Okay. So the other two, one is the domestic violence offense against the fiance, in which Shane is the one, the defendant, the appellant, is the one that called law enforcement. It is not clear what his role was, what he saw, what he did. None of that is clear. The other instance in which. From the proffer. Pardon? From the proffer. Exactly. And okay. And you say there was also additional information provided in their supplemental submission to say they wanted to put on this evidence. Correct. Nothing in that that wasn't in the proffer. No, your honor. The only evidence in there is, and that's document 58, is which they provide the documents from July 2018, in which he was intoxicated, punching multiple times, causing injury to his head. And that is the instance that was allowed. That's when I believe the axe handle was involved in. There was another one in which there was the assault on Blake Armejo. So there was, and that's the handicapped brother. So that is the one in which there was some evidence to corroborate that claim there, where they did give a little bit more information. But the problem is, there was nothing about Shane in there. If he was there, how he was there. How he knew of this, how that might have affected his state of mind. Which then goes to, I think, the most important thing here. And it's what the court noted during argument by appellant is that he didn't mean to talk about this being propensity. But that is what would happen. Even with a curative instruction, allowing in these other instances would not have been to show the victim's state of mind. Allowing these other instances would have been to show he is a violent person. Excuse me. He is a violent person. He acts violent all the time. He acted violent on this day. That was the purpose of it. The one in which it truly is relevant to show his state of mind is the one that Judge Scavdall allowed in. It's the one that resulted in a conviction. It is one in which the defendant was truly the victim in that instance. The victim was the assaulter, was the aggressor in that instance. That could show that state of mind. That is the only one that the judge allowed in. Now, with this as well, too, is the very beginning, you asked how he was convicted. The defense was allowed, their defense, even without having the defendant testify, they were allowed to argue self-defense and there was a self-defense instruction. They based that off the evidence that came in. They based that off the cross-examination, off of the little bit of their witnesses. So they were able to get their defense in. And importantly, they were able to ask about this prior instance. We had our victim in this case who, as referenced there, gave several stories. But the one thing about our victim's story about the case that we're here for today, that story was always consistent. That he went out there, he agreed. He said, let's go back here and fight. They went back there. They fought. He went to the ground. The defendant stabbed him in the leg and left him for dead. I want to go back to that part because that knife that was used during the fight was not the knife that was minted into evidence? There was a knife that was recovered. There was a knife, I believe, if memory serves me correctly, that was submitted to evidence. Well, you said that that knife, though, didn't belong to the uncle, but was the knife that the defendant had. That is correct, Your Honor. And was there any evidence or DNA or anything like that connected to whose blood that was on the knife? If memory serves me correctly, there was no evidence of DNA of the victim on that knife, if memory serves me correctly. The theory of the government is that the knife was simply wiped off or something along those lines happened. But it was not the uncle's knife. It was the defendant's knife. That, again, was the theory of the prosecution, which the jury agreed with. And I think that's the thing, is where that is what the jury found. That is what the facts showed. And that, I think, with reverse 44B evidence, we have to talk about what do the facts show? And what the facts show in the instances that were not allowed, nothing was clear in what happened in those. There was no clear proffer to say how those would be used or how that would be clarified or how it would be used for a proper purpose. And that is what the judge acknowledged as well. The appellant argues that the judge backtracked from some of these arguments. But he did not. The only thing he backtracked from was saying, in the instance, I believe, in which there was a mutual combative fight with the shotgun and the fireplace poker, if more evidence was presented, he might look into that. But he did not backtrack from his earlier arguments from that whatsoever. His rulings on those were because it was not clear what happened. The uses of them were impermissible. They might say that it was for these permissive purposes. But if it walks like a duck, talks like a duck, it's a duck. And that was the problem, is that they were not being used for the rightful purpose. And then going then to the harmless error portion of it, is that they were still allowed the self-defense claim. They were still allowed to use this 404B if there were more instances that were allowed. Again, the one with the brother, it's not even clear what the defendant's role is or knowledge was of that one. The one with the fiancee girlfriend, he is the one that called the police. But we don't know his exact knowledge of it. It doesn't show that he was aware of it. But let's say that that was allowed in. It's just another instance of this conduct, but it was against someone else. The jury still heard the evidence. They were still allowed that self-defense. They were allowed that reverse 404B, and he was still convicted. This evidence, if it were allowed in, would be, it's harmless error. It would not change that. It would be harmless. The one last thing I want to state as well is, the Monte Lego case, I thought was such an incredibly interesting reverse 404B case, because it was those unique circumstances of, you had the owner of that truck, who was not even necessarily on trial. The other two defendants that were driving the truck were. But this owner had a truck previously that had marijuana in it. And again, with these current defendants, it did. That made complete sense to use that 404B, that other conduct, to say that their knowledge, they didn't know about it because it was this guy. That makes sense. There's not that prejudicial effect that we would have in this situation. The circumstances here and for this case are much, much different and very distinguishable from the Monte Lego case. I want to be sure that I understand. There were four proffers made in regard, four instances, of where they were trying to get in evidence. One, the trial court let in. Two, he didn't. And the fourth one, he didn't appeal. And that was when I was congratulating you, counsel. That's what I was getting at. I thought the fourth one was with the acts. I think it's important, going back to Judge Hart's question, because as I understood, you're saying the third, with the two that were appealed, one of them was the result of the act. And if I'm in error, I don't want to mislead my own colleagues. That is completely fair, Your Honor. And I want to make sure that I give you the right answer. Well, opposing counsel can help us more there, because he knows what the four are, and who the two that were left out, and what the one was he didn't appeal. So I just wanted to make sure that was understood by everybody. And if I may, Your Honor, one last thing with that is that, I think, was another reason why not permitting that evidence in was appropriate, was because the facts and circumstances behind these prior offenses were undocumented. Even the ones that did result in conviction, there was not a lot to them. We don't know a lot of the details behind it. It was just the recollection of these cases. You've got that. Thank you. Do you have any time? I don't. But I can answer your axe handle thing. I'll give you a minute, and maybe you can clarify the axe issue. Yeah. So the axe handle one was the one that the judge let in, the one against Shane that was let in. But it's not really clear there was an axe handle. You know, it was initially proffered as an axe handle, but then the records that were submitted when defense counsel actually got the records just showed that Eli was beating. Of the four, which one did you not appeal? The fireplace poker thing. OK. But I guess what I'm trying to say is, I don't know if there's an axe handle. Nobody really knows if there was an axe handle. But it looks like the actual court documents for that case, it was that Eli was beating Shane with his fists. So I think there was just some initial confusion before people really knew what had happened about the axe handle thing. Thank you. Thank you for your arguments. Counsel are excused. Case is submitted.